No. 26-510

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

STATE OF WASHINGTON, *et al.*,

*Plaintiffs-Appellees*,

v.

UNITED STATES DEPARTMENT OF EDUCATION, *et al.*,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Western District of Washington

## REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

DANIEL TENNY
STEVEN H. HAZEL
  *Attorneys*
  *Civil Division, Room 7217*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2498*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 3

I.     The Government Is Likely To Prevail On The Merits ........................... 3

II.    The Remaining Factors Support A Stay ................................................ 9

CONCLUSION .................................................................................................. 12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases:**                                                                                         **Page(s)**

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,
   419 U.S. 281 (1974) ............................................................................... 7

*National Insts. of Health v. American Pub. Health Ass'n*,
   145 S. Ct. 2658 (2025) ......................................................................... 10

*Washington v. U.S. Dep't of Educ.*,
   161 F.4th 1136 (9th Cir. 2025) ............................................................ 10

*Yee v. City of Escondido*,
   503 U.S. 519 (1992) ............................................................................... 4

**Statutes:**

20 U.S.C. § 1221e-4 ..................................................................................... 9

20 U.S.C. § 1228a(b) .................................................................................... 9

20 U.S.C. § 1232(a) ...................................................................................... 9

**Regulations:**

34 C.F.R. § 75.253(a) ................................................................................... 7

34 C.F.R. § 75.253(a)(1) ............................................................................... 3

34 C.F.R. § 75.253(a)(1)(i)(B) ..................................................................... 4

34 C.F.R. § 75.253(a)(3) ............................................................................... 4

34 C.F.R. § 75.253(a)(5) ...................................................................... 1, 3, 9

34 C.F.R. § 75.253(b) ................................................................................... 3

34 C.F.R. § 75.253(c) ................................................................................... 9

34 C.F.R. § 75.253(g) ................................................................................... 8

**Other Authorities:**

45 Fed. Reg. 22,494 (Apr. 3, 1980) ........................................................................ 5

59 Fed. Reg. Doc. No. 94-8888 (Apr. 13, 1994) .................................................... 6

78 Fed. Reg. 49,338 (Aug. 13, 2013) ..................................................................... 5

89 Fed. Reg. 1,982 (Jan. 11, 2024) ........................................................................ 5

89 Fed. Reg. 70,300 (Aug. 29, 2024) ..................................................................... 5

# INTRODUCTION

There is no dispute that, as the regulation at issue here expressly provides, "[a] grantee, in order to receive a continuation award from the Secretary [of Education] for a budget period after the first budget period of an approved multiyear project, must . . . [r]eceive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government." 34 C.F.R. § 75.253(a)(5). Nor is there any dispute that the district court prohibited the government, when deciding whether to continue plaintiffs' multiyear projects beyond their first budget period, from taking account of whether the Secretary believed that the continuation of the project was in the best interest of the government in light of its current policy priorities. Nothing in plaintiffs' response justifies the court's disregard for the regulation's plain and unambiguous text, and the district court's injunction should be stayed.

Plaintiffs' response focuses on a flurry of procedural arguments. Those arguments are mistaken on their own terms, but for present purposes it suffices that, even if accepted, these contentions would at most require the government to provide additional explanation and could not justify an injunction prohibiting the government altogether from relying on one of the express regulatory conditions for continuation of a grant.

When plaintiffs finally confront the regulatory text, they do not dispute that the ordinary meaning of the best-interest provision would allow the Department of

Education to assess current policy priorities. Instead, they argue that a separate provision permitting the Department to consult certain factual reports implicitly precludes all other considerations. But the provision on which plaintiffs rely merely clarifies the government's authority to review any factual information relevant to grantee performance; it does not nullify the Secretary's authority to make determinations about whether projects are in the best interest of the federal government.

As to the equities, plaintiffs ignore the injunction's practical consequences. By requiring the Department to make new continuation decisions without considering current policy priorities, the injunction threatens to force the Department to distribute millions of dollars that it would likely never recover. The injunction also intrudes on the Executive's Article II authority by compelling the Department to administer discretionary grant programs in accordance with priorities set by a prior Administration with which the present Administration vehemently disagrees. By contrast, grantees have now had many months to prepare for the loss of federal funds, including by identifying alternative funding sources. And because the Department intends to reallocate the funds at issue here, any downstream effect on plaintiffs will be offset by increased funding for other projects that likewise support students' mental health.

# ARGUMENT

## I. The Government Is Likely To Prevail On The Merits

**A.** Plaintiffs fail to justify the extraordinary premise underlying the district court's injunction: that the Department must decide whether "continuation of [a] project is in the best interest of the Federal Government," 34 C.F.R. § 75.253(a)(5), without considering its current policy preferences. Plaintiffs make no effort to ground that interpretation in the regulation's text, instead quickly pivoting to a separate provision authorizing the Department to review certain factual reports. Resp. 16-21 (citing 34 C.F.R. § 75.253(b)).

That procedural provision cannot bear the weight plaintiffs place on it. It merely clarifies the Department's authority to consider any factual information relevant to a grantee's performance. *See* 34 C.F.R. § 75.253(b). This case does not involve a dispute about which factual information relevant to performance may be considered—although the regulation is in any event expansive, authorizing the review of "any relevant information" regarding performance. *Id.* The critical point here is that the procedural provision addresses only which factual information relating to performance-based factors will be considered. The substantive provision, on the other hand, just as clearly conditions continuation not only on performance, *see id.* § 75.253(a)(1), but also on other considerations such as the best-interest provision at issue here. Although plaintiffs apparently believe that only performance can be considered, it is unclear, for example, whether plaintiffs also mean to suggest that the

3

government cannot determine whether an applicant "[c]ontinue[s] to meet all applicable eligibility requirements of the grant program," *id.* § 75.253(a)(3), as expressly required by the regulations, if some of those requirements are unrelated to performance.[1]

Plaintiffs struggle to explain how their construction would give the best-interest provision any independent effect. They portray the provision as permitting the Department to discontinue funding "based on project performance," Resp. 11, but separate requirements already capture whether a project is meeting its "performance targets," 34 C.F.R. § 75.253(a)(1)(i)(B). Plaintiffs hypothesize that the best-interest provision could have independent effect if a grantee submits a report identifying factual developments that will impair a project's "future performance, such as an earthquake that destroys the school conducting the project, or the sudden departure of multiple critical team members." Resp. 19 (emphasis omitted). A requirement that the Secretary determine that continuing a project would be in the best interest of the federal government would be a bizarre way to address those scenarios.

And even in the wake of a natural disaster or staffing shortage, the Secretary would need to go beyond the information described in Section 75.253(b) and instead consider policy priorities, including whether those priorities are best served by

---

[1] The government argued in district court that Section 75.253(b) does not limit the Department's consideration of current policy preferences, *see* Dkt. 256, at 21-24; Dkt. 264, at 9, so plaintiffs' contention (Resp. 18) that the government waived any relevant argument is unavailing, *see Yee v. City of Escondido*, 503 U.S. 519, 534 (1992).

4

supporting existing projects facing challenges or new projects without similar obstacles. Even plaintiffs' own examples thus demonstrate that the Secretary's assessment of the government's best interests cannot be limited to the factual information described in Section 75.253(b). The government must be entitled to make determinations based on such factors as its current set of priorities, informed by all the relevant facts and circumstances, and nothing in the regulation suggests otherwise.

Without any textual hook for their position, plaintiffs turn (Resp. 20-21) to regulatory history, but that history makes their argument even worse. In their initial form, the regulations mandated that projects serve the government's best interest and contained no provision similar to Section 75.253(b). *See* 45 Fed. Reg. 22,494, 22,510 (Apr. 3, 1980). In 1996, the Department added a provision discussing what information the Secretary "may consider" when "deciding whether a grantee has made substantial progress" on a project. *See* 78 Fed. Reg. 49,338, 49,354 (Aug. 13, 2013). It was not until 2024 that the Department replaced that provision with Section 75.253(b), *see* 89 Fed. Reg. 70,300, 70,328 (Aug. 29, 2024), in a change billed as "[c]larify[ing the Department's] procedural approach[]," 89 Fed. Reg. 1,982, 1,982 (Jan. 11, 2024). Plaintiffs do not explain whether they think that Section 75.253(a) bore their preferred atextual meaning 44 years before Section 75.253(b) appeared in its current form, or whether they regard the 2024 change to Section 75.253(b) as

5

dramatically altering the best-interest provision's meaning, but neither position is tenable.

Plaintiffs' related claim (Resp. 21) that in practice the Department has "limited consideration" under the best-interest provision to "performance and financial information" is based on a guidance document that, in the same paragraph that plaintiffs cite, emphasizes that grantees must satisfy independent requirements regarding performance, financial status, and the government's best interest. *See* Dkt. 151-4, at 42. Contrary to plaintiffs' suggestion, the Department has long considered factors other than performance in determining whether continuation funding serves the government's best interest. *See, e.g.*, 59 Fed. Reg. Doc. No. 94-8888 (Apr. 13, 1994) (discussing various non-performance factors, including a Presidential "mandate to implement cost-effective, cost-saving initiatives").

**B.** Plaintiffs devote most of their response not to defending the district court's regulatory interpretation but to advancing a slew of procedural attacks on the Department's non-continuation notices and related actions. As we previously explained (Mot. 14-15), even if these challenges had any merit, they would at most support a remand for further explanation or process and not an injunction forcing the Department to make new continuation decisions without considering its current policy preferences. Plaintiffs offer no response to this critical point, and the Court can dispense with their procedural challenges on this basis alone.

In any case, those challenges lack merit. As discussed above, plaintiffs misread a guidance document that referred to considering performance concerns in addition to, rather than to the exclusion of, considering whether continuation would be in the best interest of the federal government. *See supra* p. 6. Plaintiffs' reliance-interests argument (Resp. 11) similarly relies on the mistaken assumption that the Department promised to "make annual continuation awards based on project performance" alone, rather than—as the regulations, the grant agreements, and even the guidance plaintiffs invoke make clear—that the performance and best-interest requirements are separate and must both be satisfied. *See* 34 C.F.R. § 75.253(a); *see, e.g.*, Dkt. 54-1, at 5 (emphasizing that "continuing funding" is contingent on the Department's best-interest determination).

Plaintiffs' discussion of the reasoned-explanation requirement disregards the deferential nature of Administrative Procedure Act review and rehashes arguments we already refuted. *See* Mot. 15-16. Plaintiffs do not dispute that the relevant question is whether the agency's "path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974). Rather, plaintiffs urge (Resp. 15) this Court to review the notices in isolation, without considering the contextual indications, such as the Grant Priorities Directive, that the government sought to ensure that grants do not fund potentially discriminatory projects. But the Directive initiated the review process that precipitated the notices and is plainly relevant to construing them—as is evident from plaintiffs' filings throughout this litigation, which

often discuss the Directive and the notices in tandem. And as noted above, any failure to explain would give rise, at most, to an order requiring the government to provide further explanations, not to a prohibition on effectuating the government's funding priorities as specifically contemplated by the governing regulation.

No more successful is plaintiffs' assertion (Resp. 13) that the notices "provided no factual findings." As we previously explained (Mot. 15), for many projects the factual basis for non-continuation is apparent from the administrative record. *See, e.g.*, Dkt. 204-1, at 1458 (discussing a project with the goal that "at least 40% of counselors . . . be from traditionally underrepresented groups (Latinx, AAPI, or other)"). And to the extent that any grantee was uncertain, they could submit a request for reconsideration to which the Department would provide an individualized response. *See* 34 C.F.R. § 75.253(g). Notably, plaintiffs do not identify any project for which they claim to be unable to determine the factual basis for non-continuation. And once again, at an absolute minimum, the government should have been permitted to fill any perceived gaps in the record.

Plaintiffs' other procedural arguments, many of which they fail to adequately develop, are similarly meritless. First, they criticize the notices for omitting "any explanation why [the Department] discontinued *these* grants but not other grants." Resp. 13. Unsurprisingly, plaintiffs cite no authority for the proposition that a non-continuation notice regarding one project would need to explain why any other project has been continued. Second, plaintiffs highlight (Resp. 14) a statutory

8

provision directing certain grant applicants to "develop and describe" steps they "propose[] to take to ensure equitable access to, and equitable participation in, the project." 20 U.S.C. § 1228a(b). Even the district court did not rely on that provision, which has no bearing on the meaning of the best-interest provision or the sufficiency of the Department's procedures. There are many measures that could ensure equitable access without engaging in the sorts of preferential treatment with which the Department was concerned. Third, plaintiffs declare (Resp. 22) that the Department "openly flouted" a regulatory provision giving "priority to continuation awards over new grants." *See* 34 C.F.R. § 75.253(c). That priority serves an important function that has no relevance here: all else being equal, the Department will continue to fund existing projects rather than seeking out new projects. That does not mean that the Department must continue to fund projects that it no longer wishes to fund at all; rather, the best-interest determination is an express condition on continuation awards. *See id.* § 75.253(a)(5). Fourth, plaintiffs focus on statutory provisions setting procedural requirements for grant competitions, but those requirements do not apply to non-continuation decisions. Resp. 22 (citing 20 U.S.C. §§ 1221e-4, 1232(a)).

## II. The Remaining Factors Support A Stay

Plaintiffs ignore the significant injuries that the injunction imposes on the government and the public. They claim (Resp. 23) that to comply with the injunction, the Department "merely need[s] to make new lawful continuation decisions." By "lawful continuation decisions," plaintiffs mean decisions that ignore the

9

Department's determination of whether continuation would be in the best interest of the federal government. Given that the non-continuation decisions challenged here were explicitly premised on considerations that the injunction prohibits, allowing the injunction to go into effect could "result in the disbursement" of millions of dollars in federal funds to projects that the Department would not otherwise support. *Washington v. U.S. Dep't of Educ.*, 161 F.4th 1136, 1141 (9th Cir. 2025) (per curiam). Conspicuously absent from plaintiffs' response is any commitment to "repay grant money if the Government ultimately prevails" in this appeal. *National Insts. of Health v. American Pub. Health Ass'n*, 145 S. Ct. 2658, 2658 (2025).

Similarly incorrect is plaintiffs' suggestion (Resp. 2) that the government "requested" that the district court direct it to make new continuation decisions by a date certain. To the contrary, the government urged the court to structure its judgment to permit the government to appeal before any deadline was enforced. *See* Dkt. 272, at 8-10. When the court declined, the government proposed—and the court ultimately accepted—February 6 as a date by which it would be possible to make new continuation decisions. Dkt. 356. The fact that the court adopted a feasible deadline does nothing to alleviate the irreparable harm created by forcing the Department to make funding decisions in accordance with an unduly restrictive regulatory construction.

Plaintiffs' contention that the injunction "simply seeks to enforce the Department's own regulations" and does not "override the Department's judgment"

10

is difficult to comprehend. Resp. 24 (quotation marks omitted). The injunction dictates that for the multi-year duration of the relevant grants, the Department must disregard its current policies and instead adhere to priorities set by the prior Administration with which the current Administration vehemently disagrees. That intrusion on the Executive's Article II authority is especially egregious in the context of discretionary grant programs.

In addition to glossing over the government's harms, plaintiffs exaggerate their own asserted injuries. Plaintiffs argue (Resp. 25) that if grant funding is not continued, grantees could be "forced to lay off scores of mental health professionals and terminate financial support for many graduate students." Given that grantees have known that the Department intends to discontinue the grants since April 2025, they have had ample time to adapt their programs, including by identifying other sources of funding. Moreover, because the Department plans to reallocate grant funds to new projects, any alleged harm to plaintiffs would be offset by an increase in support for other projects that likewise serve students' mental health.

## CONCLUSION

The Court should stay the district court's injunction pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

DANIEL TENNY

*/s/ Steven H. Hazel*

STEVEN H. HAZEL
  *Attorneys*
  *Civil Division, Room 7217*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2498*
  *Steven.H.Hazel@usdoj.gov*

February 2026

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,545 words. This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

                                                */s/ Steven H. Hazel*
                                                STEVEN H. HAZEL

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system. Service will be accomplished by the ACMS system.

*s/ Steven H. Hazel*
Steven H. Hazel

A2