**No. 26-510**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

STATE OF WASHINGTON, et al.,

Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF EDUCATION, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the Western District of Washington
District Court Case No. 2:25-cv-1228

**BRIEF FOR APPELLANTS**

BRETT A. SHUMATE
  *Assistant Attorney General*

DANIEL TENNY
STEVEN H. HAZEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7217*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2498*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF JURISDICTION ................................................................................ 1

STATEMENT OF THE ISSUES .................................................................................... 1

PERTINENT STATUTES AND REGULATIONS .................................................... 2

STATEMENT OF THE CASE ........................................................................................ 2

      A.     Statutory and Regulatory Background ........................................... 2

      B.     Procedural History .............................................................................. 5

SUMMARY OF ARGUMENT ....................................................................................... 9

STANDARD OF REVIEW .............................................................................................. 12

ARGUMENT ....................................................................................................................... 12

I.     The Department's Grant Continuation Decisions Are Committed To
Agency Discretion By Law ...................................................................................... 12

II.    In Any Event, The Challenged Agency Actions Are Consistent With The
APA ................................................................................................................................ 20

CONCLUSION .................................................................................................................... 36

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**          **Page(s)**

*Arizona v. Biden,*
40 F.4th 375 (6th Cir. 2022) .................................................................... 35

*Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,*
419 U.S. 281 (1974) ................................................................................ 30

*Department of Homeland Sec. v. Regents of the Univ. of Cal.,*
591 U.S. 1 (2020) .................................................................................... 31

*Donell v. Kowell,*
533 F.3d 762 (9th Cir. 2008) ................................................................... 12

*FCC v. Fox Television Stations, Inc.,*
556 U.S. 502 (2009) ................................................................................ 28

*FCC v. Prometheus Radio Project,*
592 U.S. 414 (2021) ................................................................................ 20

*FDA v. Wages & White Lion Invs., LLC,*
604 U.S. 542 (2025) ................................................................................ 29

*Florida Power & Light Co. v. Lorion,*
470 U.S. 729 (1985) ................................................................................ 34

*Lincoln v. Vigil,*
508 U.S. 182 (1993) ....................................... 10, 12, 13, 14, 15, 16, 17, 18, 23

*Milk Train, Inc. v. Veneman,*
310 F.3d 747 (D.C. Cir. 2002) .............................................................. 14, 17

*Perez Perez v. Wolf,*
943 F.3d 853 (9th Cir. 2019) ................................................................ 19, 20

*Southern Cal. All. of Publicly Owned Treatment Works v. U.S. Env't Prot. Agency,*
8 F.4th 831 (9th Cir. 2021) ..................................................................... 27

*United States v. Barajas-Guillen,*
632 F.2d 749 (9th Cir. 1980) ................................................................... 16

*United States v. Florida E. Coast Ry. Co.*,
410 U.S. 224 (1973) ............................................................... 27

*Washington v. U.S. Dep't of Educ.*,
161 F.4th 1136 (9th Cir. 2025) ......................................... 6, 16-17, 17, 18, 19

*Washington v. U.S. Food & Drug Admin.*,
108 F.4th 1163 (9th Cir. 2024) .......................................... 35

*Webster v. Doe*,
486 U.S. 592 (1988) .......................................... 10, 16, 19, 20

**Statutes:**

Bipartisan Safer Communities Act,
Pub. L. No. 117-159, 136 Stat. 1313 (2022) ............................................. 3, 14

5 U.S.C. § 701(a)(2) ....................................................... 6, 9, 12, 13, 15, 17

5 U.S.C. § 706.......................................................................... 34

8 U.S.C. § 1101(a)(15)(U)(i) ........................................................... 20

20 U.S.C. § 1232 ......................................................................... 8, 25, 27

28 U.S.C. § 1291 .......................................................................... 1

28 U.S.C. § 1331 .......................................................................... 1

**Regulations:**

2 C.F.R. § 200.340 ..................................................................... 8, 23

2 C.F.R. § 200.340(a)(4) ............................................................... 4

34 C.F.R. § 75.217(a).................................................................. 22

34 C.F.R. § 75.251 ....................................................................... 3

34 C.F.R. § 75.251(b) ................................................................... 3

34 C.F.R. § 75.253 ..................................................................... 14, 28

34 C.F.R. § 75.253(a) .................................................................................3, 14, 24

34 C.F.R. § 75.253(a)(1) ...................................................................................... 22

34 C.F.R. § 75.253(a)(1)(i) .................................................................................. 24

34 C.F.R. § 75.253(a)(2) ...................................................................................... 18

34 C.F.R. § 75.253(a)(3) ................................................................................ 18, 24

34 C.F.R. § 75.253(a)(4) ................................................................................ 18, 24

34 C.F.R. § 75.253(a)(5) ............................................ 1, 3, 9, 12, 14, 19, 20, 22, 25, 26, 29

34 C.F.R. § 75.253(b) ................................................................................23, 24, 25

34 C.F.R. § 75.253(c) ...................................................................................... 3, 32

34 C.F.R. § 75.253(f)(1) ........................................................................................ 1

34 C.F.R. § 75.253(g) ......................................................................................5, 31

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ...................................................................................... 1

Fed. R. Civ. P. 54(b) ....................................................................................... 1, 6, 7

**Other Authorities:**

*Applications for New Awards; Mental Health Service Professional Demonstration Grant Program,*
    84 Fed. Reg. 29,180 (June 21, 2019) ................................................................. 2

*Applications for New Awards; Mental Health Service Professional Demonstration Grant Program,*
    87 Fed. Reg. 60,144 (Oct. 4, 2022) ................................................................... 2

*Applications for New Awards; Mental Health Service Professional Demonstration Grant Program,*
    90 Fed. Reg. 46,584 (Sept. 29, 2025) ................................................................ 5

*Applications for New Awards; School-Based Mental Health Services Grant Program,*
    87 Fed. Reg. 60,137 (Oct. 4, 2022) ................................................................... 2

iv

*Applications for New Awards; School-Based Mental Health Services Grant Program*,
90 Fed. Reg. 46,573 (Sept. 29, 2025) ..........................................................................5, 28

*Direct Grant Programs*,
44 Fed. Reg. 26,298 (May 4, 1979) ............................................................................. 25

Order,
*Washington v. U.S. Dep't of Educ.*, No. 25-7157 (9th Cir. Jan. 14, 2026) ........................ 6

v

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331. ER-85. The district court entered partial final judgment under Federal Rule of Civil Procedure 54(b) and issued a permanent injunction on December 19, 2025. ER-3-5. The government timely appealed on January 23, 2026. ER-126; *see* Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

This case involves a category of grants that, as a matter of both regulation and contract, are subject to renewal only if the grantee receives "a determination from the Secretary [of Education] that continuation of the project is in the best interest of the Federal Government." 34 C.F.R. § 75.253(a)(5), (f)(1). Last year, the Department of Education (Department) determined that certain grants no longer serve the government's best interest and therefore should not be renewed after their scheduled expiration on December 31, 2025. The Department held a new grant competition for 2026 and allocated funds to the winners of that competition. But the district court in this case entered a permanent injunction requiring the Department to make new continuation decisions without regard to its current policy preferences, a requirement that is currently compelling the Department to fund projects that it has determined are not in the government's best interest. The questions presented are:

1. Whether the Department's grant continuation decisions are committed to agency discretion by law and thus not subject to Administrative Procedure Act (APA) review, and,

2. If the relevant decisions are subject to APA review, whether they withstand that review.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.      Statutory and Regulatory Background

**1.** The Department administers two competitive grant programs that promote mental-health services in schools: the School-Based Mental Health Services Grant Program (SBMH), which is designed to employ more mental-health services providers in schools, and the Mental Health Service Professional Demonstration Grant Program (MHSP), which is designed to train school-based mental-health service providers. *See Applications for New Awards; School-Based Mental Health Services Grant Program*, 87 Fed. Reg. 60,137, 60,138 (Oct. 4, 2022); *Applications for New Awards; Mental Health Service Professional Demonstration Grant Program*, 87 Fed. Reg. 60,144, 60,145 (Oct. 4, 2022). These programs were originally created by rulemaking by the Department in 2019. *See Applications for New Awards; Mental Health Service Professional Demonstration Grant Program*, 84 Fed. Reg. 29,180, 29,181 (June 21, 2019). Congress then provided both programs with supplemental funding through the Bipartisan Safer Communities Act, which

appropriated $1 billion "for activities under section 4108 of the [Elementary and Secondary Education Act]" for three fiscal years through 2026.  Pub. L. No. 117-159, 136 Stat. 1313, 1342 (2022).

The Department chose to issue these grants as multi-year projects, under which the Secretary of Education approves the entire project at once but approves budget periods in one-year increments.  *See* 34 C.F.R. § 75.251.  The Secretary's approval notice, in addition to funding the initial budget period, must indicate "his or her intention to make continuation awards to fund the remainder of the project period." *Id.* § 75.251(b).  In selecting applications for funding, "the Secretary gives priority to continuation awards over new grants."  *Id.* § 75.253(c).

Continuation awards are not guaranteed.  To obtain funding in subsequent budget periods, a grantee "must" satisfy multiple requirements, including requirements related to performance, financial status, and reporting.  34 C.F.R. § 75.253(a).  And, as particularly relevant here, grantees must also "[r]eceive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government."  *Id.* § 75.253(a)(5).

Similar provisions affording the government wide latitude over whether to continue providing funding are a common feature of federal grant programs. Separate from the Department regulations governing continuation decisions, other regulations allow the government to terminate most federal grants (including the grants at issue here) "pursuant to the terms and conditions of the Federal award,

3

including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4).

**2.** Plaintiffs are a group of states with grantees of multi-year SBMH or MHSP projects. *See* Dkt. Nos. 51-57, 59-106 (declarations from some of the grantees describing their projects). The "terms and conditions" of each award indicate that the award "supports only the budget period" listed therein and that the Secretary would continue funding only if, among other things, "the Department determines that continuing the project would be in the best interest of the government." *E.g.*, ER-73 (example grant agreement) (citation modified). Last year, the Acting Secretary issued a Directive instructing "Department personnel" to "conduct an internal review" to ensure that "Department grants do not fund discriminatory practices—including in the form of DEI" and "that all grants are free from fraud, abuse, and duplication." ER-63-64. Following that review, the Department sent notices to recipients of 70 SBMH and 153 MHSP grants that their funding would not be continued in 2026. *See* Dkt. No. 148, ¶¶ 3, 6. The Department explained that those grants "reflect the prior Administration's priorities and policy preferences and conflict with those of the current Administration." ER-65. Specifically, the grants "violate the letter or purpose of Federal civil rights law; conflict with the Department's policy of prioritizing merit, fairness, and excellence in education; undermine the well-being of the students these programs are intended to help; or constitute an inappropriate use of federal funds." *Id.* Each grant, the Department concluded, was "inconsistent with, and no longer

effectuates, the best interest of the Federal Government and will not be continued."

*Id.* The notices advised that grantees could submit reconsideration requests pursuant to 34 C.F.R. § 75.253(g), and many initially filed such requests and the Department provided individualized responses to each. *See* Dkt. No. 148, ¶¶ 4-5, 7-8.

In addition to discontinuing grants that were no longer in the best interest of the government, the Department also announced a new competition for SBMH and MHSP grants that included new priorities. *See* Dkt. No. 148, ¶ 9. On September 29, 2025, the Department issued notices inviting applications for new awards. *See Applications for New Awards; School-Based Mental Health Services Grant Program*, 90 Fed. Reg. 46,573 (Sept. 29, 2025); *Applications for New Awards; Mental Health Service Professional Demonstration Grant Program*, 90 Fed. Reg. 46,584 (Sept. 29, 2025). The application deadline was October 29, 2025, and the Department made new awards in December 2025.

### B. Procedural History

**1.** About two months after receiving the non-continuation notices, plaintiffs initiated this suit, alleging that the notices are ultra vires and violate the APA, Spending Clause, and separation of powers. *See* ER-107-22. When the district court issued a preliminary injunction, the government appealed and moved for this Court to stay the injunction. *See* Stay Mot., *Washington v. U.S. Dep't of Educ.*, No. 25-7157 (9th Cir. Nov. 14, 2025). In its stay motion, the government argued, among other things, that the non-continuation decisions are committed to the Department's discretion by

5

law. *See* 5 U.S.C. § 701(a)(2). This Court declined to stay the injunction on that ground, noting, in its brief discussion of the issue, that the government had not "made a strong showing on the merits" because the Department's regulations "provide meaningful standards for the court to apply." *Washington v. U.S. Dep't of Educ.*, 161 F.4th 1136, 1140-41 (9th Cir. 2025).[1]

**2.** After the parties submitted cross-motions for summary judgment on plaintiffs' APA claims, the district court granted plaintiffs' motion. As a threshold matter, the court reiterated its prior determination that it has jurisdiction over plaintiffs' APA claims and that the continuation decisions are not committed to the Department's discretion. *See* ER-14. It also determined that the non-continuation notices and the Directive qualify as "final agency action[s] subject to judicial review." ER-20.

Turning to the merits, the district court held that the notices are substantively flawed and that both the notices and the Directive are procedurally flawed. As to substance, the court believed that the provision authorizing the Department to discontinue funding for projects that it concludes no longer serve the government's best interest does not allow the agency to consider the government's current "policy preferences." ER-26. Instead, the court construed the best-interest provision as only

---

[1] Following the district court's entry of partial final judgment under Federal Rule of Civil Procedure 54(b), the government's preliminary-injunction appeal was moot and the government accordingly moved to voluntarily dismiss it. This Court granted the motion. *See* Order, *Washington*, No. 25-7157 (Jan. 14, 2026).

permitting the Department to consider the subset of interests identified as priorities by rulemaking performed at the start of a grant competition. As to procedure, the court believed that the notices and the Directive reflect numerous defects, including perceived failures to explain, to address reliance interests, and to undertake notice-and-comment rulemaking. *See* ER-23-25, ER-32-34. The court did not address plaintiffs' non-APA claims.

The district court then entered partial final judgment under Federal Rule of Civil Procedure 54(b), vacated the notices and the Directive, and issued declaratory and injunctive relief. Under the injunction, the Department must make new continuation decisions for every "discontinued Grant[] in Plaintiff States" without "[c]onsidering new priorities." ER-39-40. The court denied the government's request for a stay pending appeal. *See* ER-30.

**3.** After the government appealed and sought a stay from this Court, the Court initially entered an administrative stay but subsequently declined to enter a stay. *See* February 24, 2026, Opinion. In that opinion, the Court did not address whether the Department's construction of the regulation's "best interests" provision was "correct." *Id.* at 8. Instead, it discussed two procedural challenges to the Directive and non-continuation decisions. First, the Court stated that the challenged agency actions "appear to implicate [the statute's] rulemaking requirement," *id.*, which applies when the Department "prescribe[s]" a "generally applicable rule" with "legally binding effect." 20 U.S.C. § 1232. Second, the Court believed that the Department had not

7

made a "strong showing" that it had provided "a sufficiently reasoned explanation for the agency's decision to cancel the individual grants." February 24, 2026, Opinion, at 8-9. The Court did not discuss any of plaintiffs' other arguments.

Following this Court's decision not to stay the injunction, the Department was compelled to make new continuation decisions on a specified timeline without considering its current policy priorities. The Department therefore issued new decisions continuing most of the grants. *See* Mar. 6, 2026, Status Report, *Washington v. U.S. Dep't of Educ.*, No. 25-cv-1228 (W.D. Wash.) (explaining that the Department issued non-continuation decisions for a small number of grantees that voluntarily terminated their grants or failed to satisfy requirements not at issue in this litigation). The budget period for the grants extends through December 31, 2026. The Department has disbursed funds covering the period through June 30, but has not yet made available funds for the second half of the year. *See id.* at 2.

The Department recently notified the district court that it intends to use its independent authority under 2 C.F.R. § 200.340 to terminate some or all of the remaining grants. *See* Clarification Mot., *Washington v. U.S. Dep't of Educ.*, No. 25-cv-1228 (June 10, 2026). The Department has not previously invoked this termination authority in this litigation, and the district court's injunction and related orders accordingly do not address that authority. In light of the Department's intent to terminate some or all of the relevant grants, the government has moved to place this appeal in abeyance. That motion is pending.

8

## SUMMARY OF ARGUMENT

This case concerns the Department's administration of discretionary grant programs supporting mental-health services in schools. Congress appropriated funds for those programs without constraining how the agency distributes those funds. The Department has elected to fund the grants in stages, with a continuation decision made periodically under standards prescribed by regulation. As relevant here, that regulation, which is unchallenged in this case, establishes that grants are subject to renewal only if the grantee receives "a determination from the Secretary that continuation of the project is in the best interest of the Federal Government." 34 C.F.R. § 75.253(a)(5). Invoking that regulation, the Department issued non-continuation decisions reflecting its determination that the grants at issue no longer serve the government's best interests in light of current policy priorities. The district court entered judgment for plaintiffs, vacated the decisions, and issued an injunction compelling the Department to make new continuation decisions on an expedited timeline and without considering its current policy priorities. For multiple independent reasons, the judgment should be reversed and the injunction should be vacated.

As an initial matter, the Department's decisions about whether to continue funding the relevant grants are "committed to agency discretion by law" and thus not subject to APA review. 5 U.S.C. § 701(a)(2). The Supreme Court has recognized that APA review is unavailable when Congress makes a lump-sum appropriation without

9

providing any "meaningful standard against which to judge the agency's exercise of discretion." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993). That holding precludes review here, where Congress allocated funds for mental-health services but omitted any standards constraining the Department's disbursement of those funds.

Although the district court believed that the Department's regulations create standards permitting judicial review, the regulations confirm that the relevant decisions are committed to the agency's discretion. In *Webster v. Doe*, the Supreme Court held that a standard that turned on an agency's assessment of the government's best interests "fairly exude[s] deference" and therefore "foreclose[s] the application of any meaningful judicial standard of review." 486 U.S. 592, 600 (1988). *Webster*'s rationale applies with full force to the remarkably similar standard here.

Even if the Department's decisions were subject to APA review, any review in the context of discretionary grant programs would be especially deferential and the relevant decisions would readily withstand such review. The district court believed that the regulation required the Department to decide whether a project serves the government's best interests without regard to current policy priorities. That construction is incompatible with the regulation's plain text, which refers to the government's best interests at the time of the continuation decision. And although the court viewed it as illegitimate for the Department to consider policies not in place at the time a grant was first selected, provisions empowering agencies to account for

10

changed factual circumstances and new policies are a normal feature of federal grantmaking.

Similarly unfounded are the district court's various procedural concerns regarding the Department's decisions. Contrary to the court's suggestion, the non-continuation decisions do not implicate any notice-and-comment requirement. When the agency promulgated the best-interest provision, it conducted notice-and-comment rulemaking. Nothing in the statute compels the Department to undertake additional rounds of notice-and-comment whenever it applies the best-interest provision in the context of a particular grant. The court's related suggestion that the Department failed to sufficiently explain its decisions suffers from similar shortcomings. The Department clearly expressed the policy preference that gave rise to its non-continuation decisions. And grantees who submitted reconsideration requests professing uncertainty about the basis for non-continuation received responses with more detailed explanations.

At an absolute minimum, plaintiffs' procedural challenges do not justify the district court's injunction. If this Court were to conclude that the challenged actions are procedurally flawed, the appropriate remedy would at most involve setting aside those actions and remanding for the Department to elaborate on its rationale or perform other appropriate procedural steps. By contrast, the district court's injunction compels the Department to administer discretionary grant programs in accordance with policies set by a prior Administration with which the present

11

Administration vehemently disagrees no matter what procedural steps the Department undertakes. Relatedly, there is no basis for any injunction in the states that have not identified any public institutions that are affected by the Department's action here.

## STANDARD OF REVIEW

This Court reviews the district court's summary-judgment ruling de novo. *See Donell v. Kowell*, 533 F.3d 762, 769 (9th Cir. 2008).

## ARGUMENT

### I. The Department's Grant Continuation Decisions Are Committed To Agency Discretion By Law

By regulation, the Department of Education is entitled to discontinue a multiyear project if the Secretary determines that it is no longer "in the best interest of the Federal Government." 34 C.F.R. § 75.253(a)(5). That is a purely discretionary judgment for the Department; it is not subject to judicial review under the APA's reasoned-decisionmaking standards. *See* 5 U.S.C. § 701(a)(2) (excluding from the scope of APA review any determinations that are "committed to agency discretion by law"). Here, the agency determined that the grants at issue in this case were no longer in the best interest of the federal government, and therefore exercised its explicit authority to discontinue future funding for the grants. There is no basis to review, much less override, that determination.

12

**A.** The Supreme Court made clear in *Lincoln v. Vigil*, 508 U.S. 182 (1993), that agency decisions like this—to discontinue a previously funded project to reallocate those funds to more productive uses—are committed to agency discretion by law and not reviewable under the APA. 5 U.S.C. § 701(a)(2). In *Vigil*, the Supreme Court held that the Indian Health Service's decision to discontinue a program and reallocate funds to other programs was committed to agency discretion by law and thus not reviewable. 508 U.S. at 185-88. The Court explained the "allocation of funds from a lump-sum appropriation is" an "administrative decision traditionally regarded as committed to agency discretion" because the "very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Id.* at 192. Thus,

> an agency's allocation of funds from a lump-sum appropriation requires "a complicated balancing of a number of factors which are peculiarly within its expertise": whether its "resources are best spent" on one program or another; whether it "is likely to succeed" in fulfilling its statutory mandate; whether a particular program "best fits the agency's overall policies"; and, "indeed, whether the agency has enough resources" to fund a program "at all."

*Id.* at 193. "Of course," the Court went on, agencies must comply with any operative statutes. *Id.* But if the agency does so (and satisfies whatever self-imposed obligations may arise from regulations or grant instruments), the APA "gives the courts no leave to intrude," such as by testing the decision against the APA's standards for reasoned

13

decisionmaking. *Id.* "'[T]o [that] extent,' the decision to allocate funds 'is committed to agency discretion by law.'" *Id.* (quoting 5 U.S.C. § 701(a)(2)).

Although *Vigil* addressed lump-sum appropriations, courts have made clear that its logic extends to funding programs that leave to the agency "the decision about how the moneys" for a particular program "could best be distributed consistent with" the statute. *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751 (D.C. Cir. 2002). Such decisions "clearly requir[e] a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise." *Id.* at 752 (quotation omitted).

*Vigil* controls here. By their nature, grant programs typically leave the government significant discretion to determine which entities should receive federal funds and when that support should end. In this case, for example, the Bipartisan Safer Communities Act appropriated a lump sum to the Department "for activities under section 4108 of the [Elementary and Secondary Education Act]," Pub. L. No. 117-159, 136 Stat. at 1342, leaving it to the Department to decide how best to spend that money. The "very point" of such open-ended allocations "is to give the agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Vigil*, 508 U.S. at 192.

Like the statute, the implementing regulations codify and reinforce the Department's unreviewable discretion over how to allocate grant funds. When the Secretary approves a project with a multi-year period, the continuation of funding after the first year is not guaranteed. *See* 34 C.F.R. § 75.253. Instead, to obtain a

14

continuation award, a grantee "must" satisfy performance, financial, and reporting requirements set by the Department, as well as "[r]eceive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government." *Id.* § 75.253(a), (a)(5). The same language is included in the terms and conditions of every grant at issue in this case. *See, e.g.*, ER-73. Thus, even if a project is meeting its performance and financial targets, it is still subject to cancellation unless the Secretary makes an affirmative determination that further expenditure of federal funds would advance the government's interests. Such decisions implicate "a complicated balancing of a number of factors which are peculiarly within [the Secretary's] expertise" and are therefore not subject to APA review. *Vigil*, 508 U.S. at 192.

**B.** The district court's contrary conclusion rested on its mistaken view that the regulation governing continuation awards "cabins the Department's authority to discontinue funding" and therefore distinguishes this case from *Vigil*. ER-61. But there were some constraints on the agency's discretion in *Vigil* too: the agency was compelled to comply with its "statutory mandate to provide health care to Indian people." 508 U.S. at 194. Thus, if the agency had attempted to use the relevant funds for some other purpose, a challenge to that determination would not be barred by 5 U.S.C. § 701(a)(2). The holding of *Vigil* is that the potential for review to enforce positive-law limitations on the agency's discretion does not authorize courts to also second-guess the agency's exercise of that discretion within permissible limits.

15

In this case, neither the district court nor plaintiffs have pointed to any statutory provision that constrains the agency's discretion in this case in any relevant sense. Rather, as noted above, the relevant appropriation merely allocates a lump sum for broad purposes.

There is likewise no regulatory limitation that provides a judicially manageable standard for reviewing the Secretary's determination. To the contrary, the regulation reinforces, rather than constrains, the agency's discretion by authorizing the Secretary to determine whether the continuation of a grant is in the best interest of the federal government. Language authorizing the Executive to determine what is "in the interests of the United States" has been recognized as judicially unreviewable. *Webster v. Doe*, 486 U.S. 592, 600-01 (1988) (holding that a statute authorizing the CIA Director to terminate an employee "whenever he shall deem such termination necessary or advisable in the interests of the United States" was unreviewable under the APA because that language "fairly exudes deference to the Director, and appears to foreclose the application of any meaningful judicial standard of review"); *cf. United States v. Barajas-Guillen*, 632 F.2d 749, 753 (9th Cir. 1980) (describing in the immigration context a determination of "the best interests of the United States" to be "a wide range of discretion"). The district court did not identify any "meaningful standard against which to judge the agency's exercise of discretion" that these projects are no longer in the best interest of the Federal Government, *see Vigil*, 508 U.S. at 191 (quotation omitted), instead seeking to require the agency to justify determinations

16

that fall within the agency's unreviewable discretion. That holding cannot be reconciled with *Vigil* or *Webster*.

**C.** When the government sought a stay of the preliminary injunction in this case, this Court properly did not adopt the district court's reasoning. *See Washington v. U.S. Dep't of Educ.*, 161 F.4th 1136, 1140 (9th Cir. 2025). And the Court's brief discussion in support of its conclusion that the government has not made a "strong showing on the merits of its claim," *id.* does not provide any basis for affirming the district court's judgment on alternative grounds after full briefing.

This Court began by correctly noting that the governing statute cabined the agency's discretion in some respects because it "explicitly specifies the two grant programs at issue in this action." *Washington*, 161 F.4th at 1140. As discussed above, that limitation would allow courts to review compliance with those statutory provisions, such that a determination to use the funding for other purposes would not be immune from judicial review under 5 U.S.C. § 701(a)(2). That much is clear from *Vigil* itself, in a passage quoted by the stay panel. *See id.* (citing *Vigil* as "holding 'as long as the agency allocates funds from a lump-sum appropriation *to meet permissible statutory objectives*, § 701(a)(2) gives the courts no leave to intrude'" (quoting 508 U.S. at 193)). The relevant point here is that the statute provides no limitation relevant to the determination the agency actually made. And as the D.C. Circuit has recognized, *Vigil*'s logic applies with equal force to "funding for [a particular] program." *Milk Train*, 310 F.3d at 751. Whether Congress allocates funds for an agency (as in *Vigil*)

17

or a broad program (as in this case), the absence of a "statutory reference point" against which to assess the agency's exercise of discretion precludes APA review. *Id.* (citation omitted).

At the stay stage for the preliminary injunction, the panel went on to state that the statute here "does not commit broad discretion to the Department." *Washington*, 161 F.4th at 1140. That, too, is correct in the sense that there is no statutory provision explicitly conferring discretion. But there was no such statute in *Vigil* either; the point is that in the absence of any "meaningful standards" constraining an agency's decision, the agency's determination about how to expend appropriated funds cannot be second-guessed by a court. *Vigil*, 508 U.S. at 191. As noted above, despite many opportunities to identify any such standards in the statute, plaintiffs still have not done so.

The only standard that has been identified comes from the Department's regulations. *See Washington*, 161 F.4th at 1140-41. Once again, the government does not dispute, as this Court stated at the stay stage, that the regulations "provide meaningful standards for the court to apply to review discontinuation decisions." *Id.* Several of the provisions of that regulation, such as the requirement to meet all applicable eligibility requirements, *see* 34 C.F.R. § 75.253(a)(3), and the requirement to submit certain reports and maintain certain systems, *id.* § 75.253(a)(2), (4), may be susceptible to judicial review. But this case does not concern the application of those standards, and as noted above the presence of some judicially manageable standards

does not mean that a plaintiff is entitled to judicial review of an agency's exercise of discretion under a standard that provides no guideposts for judicial review.

The only portion of the regulation that is at issue here is the Secretary's decision whether to issue a "determination . . . that continuation of the project is in the best interest of the Federal Government." 34 C.F.R. § 75.253(a)(5). That language does not provide any meaningful standard upon which to judge the Secretary's decision, and in fact echoes language that the Supreme Court has expressly held confers unreviewable discretion on an agency. *Compare Webster*, 486 U.S. at 600-01 (permitting termination of an agency employee when the agency head "deem[s]" the termination "in the interests of the United States"), *with* 34 C.F.R. § 75.253(a)(5) (requiring that a grantee "receive a determination from the Secretary" that continuing a project "is in the best interest of the Federal Government").

At the stay stage, this Court noted that "courts routinely treat discretion-laden standards as providing 'law to apply.'" *Washington*, 161 F.4th at 1141 (quoting *Perez Perez v. Wolf*, 943 F.3d 853, 862 (9th Cir. 2019)). But the case on which this Court relied did not suggest that all standards, no matter how "discretion-laden," provided a basis for judicial review; such a holding would be irreconcilable with *Webster*. And the particular standards at issue in that case provided far more concrete requirements. The statute at issue there provided "that a petitioner is eligible for a U visa if the petitioner (1) has suffered 'substantial physical or mental abuse' as a result of having been a victim of qualifying criminal activity; (2) 'possesses information' about

19

qualifying criminal activity; and (3) 'has been helpful, is being helpful, or is likely to be helpful' to an authority 'investigating or prosecuting' qualifying criminal activity." *Perez Perez*, 943 F.3d at 863 (quoting 8 U.S.C. § 1101(a)(15)(U)(i)).  There is no comparison between that language and a regulation that merely contemplates an open-ended determination about whether continuing a grant is "in the best interest of the Federal Government," 34 C.F.R. § 75.253(a)(5).  Notably, the government is unaware of any case other than this one in which a court has been willing to review the Executive Branch's determinations as to the best interest of the United States.  Those determinations implicate policy judgments for which there is no "meaningful standard of judicial review."  *Webster*, 486 U.S. at 600.

## II.     In Any Event, The Challenged Agency Actions Are Consistent With The APA

**A.** Even if the actions at issue here were reviewable under the APA, they would readily withstand that review.  The APA requires that reviewable agency actions "be reasonable and reasonably explained."  *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).  "Judicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency."  *Id.*  That deference is heightened in this case, which combines a discretionary grant program with statutory and regulatory provisions that "exude[] deference."  *Webster*, 486 U.S. at 600.

Measured against this standard, the challenged Department actions comport with the APA.  Following an "internal review" to ensure that grants "do not fund

20

discriminatory practices—including in the form of DEI," ER-63-64, the Department issued notices determining that each of the relevant grants "no longer effectuates[] the best interest of the Federal Government and will not be continued," ER-65. The notices explain that the underlying projects "conflict with" the Administration's "priorities and policy preferences" because they "violate the letter or purpose of Federal civil rights law; conflict with the Department's policy of prioritizing merit, fairness, and excellence in education; undermine the well-being of the students these programs are intended to help; or constitute an inappropriate use of federal funds." ER-65. It is well within the Department's discretion to conclude that the government's interests are best served by reallocating taxpayer dollars from projects it regards as discriminatory to projects that do not raise the same concerns. Particularly in the context of discretionary grants, where the Department unquestionably enjoys wide latitude to determine how best to implement the program, that decisionmaking process was both reasonable and reasonably explained.

**B. 1.** The district court nonetheless entered an injunction that has effectively compelled the Department to allocate taxpayer dollars to projects that it has determined are not in the government's best interest. In reaching that extraordinary result, the court placed no meaningful weight on the deference afforded to the agency under the statute and regulations. Nor did the court address the best-interest provision's text or suggest that its ordinary meaning would preclude the non-continuation decisions here.

21

Instead, the district court imposed atextual limits on that provision requiring the Department to assess the government's best interest without considering current policy priorities. In doing so, the court conflated the best-interest provision with regulatory provisions governing whether to issue a grant in the first place. *See* ER-28. When selecting applications for new grants, the Secretary may examine numerous factors, including "any priorities . . . that have been published in the Federal Register and apply to the selection of those applications." 34 C.F.R. § 75.217(a). When deciding whether to award continuation funds, however, the Department evaluates whether "continuation of the project" serves the government's "best interest." *Id.* § 75.253(a)(5). The best-interest provision thus authorizes the Department to consider all government interests at the time of a continuation decision and is not limited to the subset of interests embodied in priorities identified at the outset of a grant contest. A contrary result would render the best-interest provision largely superfluous, as other prerequisites for obtaining a continuation award—such as the requirement that a grantee demonstrate "substantial progress" towards the project's "goal and objectives," *id.* § 75.253(a)(1)—typically capture whether a project furthers the priorities set at the start of a grant contest.

The district court grounded its construction of the best-interest provision not in that provision's text but in the court's belief that it would be illegitimate for the Department to make non-continuation decisions based on "unpublished policy preferences." ER-28. But again, when Congress allocates funds without specifying

22

how those funds should be spent, "the very point" is to allow the agency "to adapt to changing circumstances," including by considering whether "a particular program 'best fits the agency's overall policies.'" *Vigil*, 508 U.S. at 192-93 (citation omitted). Indeed, separate from the Department's regulations governing continuation decisions, other regulations generally allow the government to terminate federal grants "pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340. Those regulations demonstrate that authority to stop distributing federal funds based on the government's current policy preferences is an ordinary feature of federal grant programs.

It is the district court's approach that yields extraordinary results. As applied here, it has effectively compelled the Department to assess the government's best interests according to priorities established by a prior Administration with which the current Administration vehemently disagrees. And other applications of the district court's approach would lead to equally improbable results. If circumstances changed such that a particular program were no longer needed, or a dire need arose elsewhere for which scarce funds were required, the court's reading of the regulations would force the government to continue to commit funds based on outdated priorities.

Similarly mistaken is the district court's reliance on a provision recognizing that when the Department makes continuation decisions, it may consider "any relevant information regarding grantee performance," including "performance measures" and

23

"financial information." 34 C.F.R. § 75.253(b). From this, the court concluded that the Secretary can only decline to award continuation funding based on "performance, fiscal, and management reports." ER-30. But the language on which the court relied merely confirms that the Department "may" consider certain reports and does not restrict its authority under the best-interest provision. 34 C.F.R. § 75.253(b).

The provision regarding the information that may be considered maps on to certain requirements in the substantive provision about continuation awards, which require substantial progress in achieving performance targets and the maintenance of appropriate financial and administrative management systems. *Compare* 34 C.F.R. § 75.253(b), *with id.* § 75.253(a)(1)(i), (a)(4). The information provision cannot plausibly mean that the Department lacks authority to consider the other substantive requirements, each of which is mandatory. *See id.* § 75.253(a) ("A grantee, in order to receive a continuation award . . . , must . . . ."). And there may be factual materials relevant, for example, to whether the grantee "[c]ontinues to meet all applicable eligibility requirements of the grant program." *Id.* § 75.253(a)(3). The text and structure of the relevant regulation thus make clear that it provides examples of the sorts of materials the Secretary is most likely to consider, rather than limiting the Secretary's discretion.

Moreover, even if the cited provision were construed as a restriction, it would at most limit the factual reports that the Department may review and would not require the agency to ignore the government's current policy preferences. Neither

24

plaintiffs' argument nor the district court's decision was premised on any contention that the agency considered factual materials that it was not permitted to consider. Rather, the agency concluded, based on materials that it was undisputedly permitted to consider, that one of the express requirements of the regulation was not satisfied because the Secretary declined to make an affirmative "determination . . . that the continuation of the project is in the best interest of the Federal Government." 34 C.F.R. § 75.253(a)(5). Nothing about the subsequent provision about "[i]nformation considered," *see id.* § 75.253(b), calls that determination into doubt.

**2.** In declining to enter a stay, this Court did not address whether the district court's construction of the best-interest provision is "correct." February 24, 2026, Opinion, at 8. Instead, the Court focused on two procedural challenges raised by plaintiffs and accepted by the district court. *Id.* at 7-9. Those challenges lack merit and would not in any event support the district court's injunction.

**a.** It was error for the district court to hold that the Department was required to undertake "notice-and-comment rulemaking." ER-31; *see also* February 24, 2026, Opinion, at 8 (noting that the challenged agency actions "appear" to implicate a rulemaking requirement). The statute only requires notice-and-comment rulemaking when the Department "prescribe[s]" a "generally applicable rule" with "legally binding effect." 20 U.S.C. § 1232. By engaging in notice-and-comment rulemaking when it adopted the best-interest provision, *see Direct Grant Programs*, 44 Fed. Reg. 26,298, 26,321 (May 4, 1979), the Department fully complied with that statutory requirement.

25

Under the district court's contrary approach, the Department would apparently need to perform a months- or years-long rulemaking process whenever it seeks to consider a new "interest of the Federal Government" or to weigh previously identified interests differently. 34 C.F.R. § 75.253(a)(5). Nothing in the APA prevents an agency from adopting, through notice-and-comment rulemaking, a standard allowing the agency to account for changed factual circumstances or policies at the time it makes a decision. Indeed, similar standards pervade the Code of Federal Regulations, and the government is unaware of any court suggesting that they are incompatible with notice-and-comment requirements.

In concluding otherwise, the district court first pointed to a Directive that merely instructed "Department personnel" to conduct an "internal review" of certain grants. ER-63-64. As an initial matter, because the Directive has been replaced by superseding guidance, *see* Bessette Decl. 1-2, *California v. U.S. Dep't of Education*, No. 25-cv-10548 (D. Mass. June 1, 2026), plaintiffs' claims are moot insofar as they challenge the Directive. In any event, an internal instruction to agency personnel to conduct a review cannot plausibly described as final agency action, must less a rule that must be promulgated through notice and comment. Agency supervisors instruct their subordinates all the time to conduct reviews, or propose actions, or make recommendations, but neither the directions nor the resulting proposals by subordinate officials in the agency constitute a legally binding determination. To the contrary, it is black-letter law that "an agency action is not final when subsequent

26

agency decision making is necessary to create any practical consequence." *Southern Cal. All. of Publicly Owned Treatment Works v. U.S. Env't Prot. Agency*, 8 F.4th 831, 837 (9th Cir. 2021). Thus, the fact that the "review of all new grants" eventually "result[ed] in the discontinuation of grants in Plaintiff States," February 24, 2026, Opinion, at 7-8, does not transform the Directive into final agency action subject to APA review—much less a regulation implicating any notice-and-comment requirement.

The only final agency actions at issue in this case were the determinations not to continue the relevant grants. But although those actions were final, they were not rules. Each notice "adjudicate[s] a particular set of disputed facts" rather than establishing any "generalized" rule, as would be necessary to trigger the notice-and-comment requirement. *United States v. Florida E. Coast Ry. Co.*, 410 U.S. 224, 246 (1973); *see* 20 U.S.C. § 1232. That the hundreds of decisions were largely "identical" and reflected similar "policy criteria," February 24, 2026, Opinion, at 7, provides no basis for treating them as a single, "generally applicable rule," 20 U.S.C. § 1232. On plaintiffs' contrary theory, it is not obvious why the Department's initial decisions awarding grant funding—which generally feature similar language and may be issued at about the same time—would not be invalid for failure to undergo notice and comment, an absurd result that plaintiffs do not address.

Plaintiffs do not identify the legally binding rule that was ostensibly applied here. Each determination provides a description of the basis for the determination,

27

citing the relevant regulatory standard in 34 C.F.R. § 75.253 but not citing any newly created regulation as binding or giving additional force to the agency's pronouncement. Thus, each determination is an individual adjudication. Agencies are entitled to proceed by adjudication, including by adjudicating a group of similar matters at the same time. If the same adjudicator makes the same decision on similar facts across a number of cases, that laudable consistency does not somehow transform those individual decisions into a legally binding rule.

To the contrary, an agency would be entitled, in the next adjudication, to depart from its prior practice so long as it expressed consciousness of the change in position and expressed a good reason for the new position. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). By contrast, an agency is not entitled to "simply disregard rules that are still on the books," *id.*, as those rules have a legally binding effect and must be formally rescinded or superseded in order to be displaced. As noted, there is no such rule at issue here (other than the continuation regulation, which the agency followed).

In significant part, the district court's discussion on this score seems to reflect a misunderstanding of the role rulemaking plays in the grant-selection process. ER-31-32. When selecting grants, the Department typically publishes a notice identifying the "absolute priorities" and "competitive preference[s]" that it will consider when evaluating applications. *See, e.g.*, 90 Fed. Reg. at 46,574. As the notice makes clear, those priorities and preferences guide the agency's decisions regarding which projects

28

to fund in the first place. *Id.* at 46,574-75. They do not constrain the Department's later assessment of whether "continuation of the project is in the best interest of the Federal Government." 34 C.F.R. § 75.253(a)(5).

**b.** The district court's conclusion that the notices fail to satisfy the APA's reasoned-explanation requirement likewise reflects multiple errors. ER-23-35; *see also* February 24, 2026, Opinion, at 8-9. At the outset, the district court faulted the Department for sending "identical" notices without including "individualized reasons." ER-23. But there is nothing improper about providing a common explanation to grantees that share a common characteristic. *See, e.g. FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 548 (2025) ("The FDA's regulatory efforts culminated in the 2021 denial of over a million applications for flavored e-cigarette products. The dispute before us arises from that mass denial."). Rather, as long as each grantee receives an explanation that is sufficient to justify the agency's action, the fact that others received a similar explanation provides no ground for complaint. Here, the Secretary's discretionary determination that the grants were no longer in the government's interest, to the extent it required any explanation at all, was adequately explained by the letters that indicated the types of concerns raised by the grants at issue.

In a similar vein, the district court criticized the non-continuation notices for "recit[ing] a disjunctive list of reasons" without "identify[ing] which" reason undergirds each non-continuation decision. ER-24-25. Because those reasons are

29

closely related to each other and to the Department's objective of ending funding for "discriminatory practices," ER-63-64, the notices include more than enough information such that the Department's "path may reasonably be discerned," *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974). The clear thrust of the notices was that the grants at issue here advance the sorts of DEI programs that the Department disfavors. Because the agency would conclude that the grants were not in the government's best interest, for example, regardless of whether they were flatly illegal or merely inconsistent with the spirit of the civil rights laws, the agency was not compelled to make individualized determinations for each grant when overlapping, mutually reinforcing, and independently sufficient grounds for non-continuation applied to each grant. Instead, the Secretary identified a category of grants that it preferred not to continue to fund, identified that category with reasonable particularity, and declined to issue a determination that those grants were in the best interests of the federal government.

For similar reasons, the district court was mistaken to suggest (ER-25) that the Department failed to identify the "factual basis" for its decisions. It is clear both from the non-continuation decisions and from the grants themselves why the Department decided not to continue these particular grants. For many projects, the factual basis for non-continuation is apparent from the administrative record. *See, e.g.*, ER-67-68 (discussing a project with the goal that "at least 40% of counselors . . . be from traditionally underrepresented groups (Latinx, AAPI, or other)"). If any grantee

30

is uncertain about the ground for a non-continuation decision, the appropriate course would be to seek reconsideration under the Department's regulations, *see* 34 C.F.R. § 75.253(g), not to request injunctive relief encompassing a large number of projects for which there is no room for doubt about the factual basis for non-continuation. Plaintiffs do not identify any project for which they claim to be unable to determine the factual basis for non-continuation.

**c.** The district court's remaining procedural concerns are also unfounded. *See also* February 24, 2026, Opinion, at 6-10 (declining to address these concerns). The court believed (ER-23) that "the Department should have considered the Grantees' reliance interests." When plaintiffs applied for the grants, they were informed that continuation funding was not guaranteed and was contingent on numerous prerequisites, including the Secretary's determination that continued funding serves the government's best interest. *See* ER-73 (noting, in the grant agreement, that the award "only supports" the initial budget period, and that any continuation funding depends on various prerequisites including the Department's "best interest" determination); *Department of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 31 (2020) (explaining that an explicit disclaimer is "pertinent in considering the strength of any reliance interests"). In addition, the Administration's policy preference for terminating grants related to diversity, equity, and inclusion was well publicized. Any reliance on obtaining taxpayer dollars for another year would be objectively unreasonable. And in any event, rather than exercising its authority to terminate the

31

grants immediately, the agency gave notice that the non-continuations would be effective at the end of the last funded budget period, thus providing an opportunity for the grantees to prepare for the termination of funding in an orderly way.

Other procedural concerns raised by the district court are premised on its erroneous construction of the best-interest provision. For example, although the court believed that the Department "violated" a "regulatory preference" for funding "grants for their entire project period," ER-34, that preference is expressly "[s]ubject to" the best-interest provision, 34 C.F.R. § 75.253(c). The point is that when a grantee satisfies its obligations and the project is one that the Secretary determines it is in the government's best interest to continue, the agency will prefer to continue existing grants rather than to start new ones. That makes sense as a matter of allocation of resources, avoiding start-up costs and disruptions by unnecessarily replacing old grants with new ones. It does not remotely suggest that the agency will continue to fund grants that have characteristics that render them unsuitable for receiving government funds, particularly given the express requirement that the Secretary make an affirmative determination that the grant continues to be in the government's best interest.

Equally mistaken is the district court's suggestion (ER-33) that the Department "essentially—and surreptitiously—ran a new grant contest evaluating existing original grant applications against new unpublished priorities." Discontinuing grants based on an assessment of the government's best interest bears no resemblance to conducting a

contest to award new grants and is not subject to the same requirements. *See supra* pp. 20-25. A new grant contest would involve awarding new grants, and when the Department does that, it applies appropriate criteria that have been devised under the appropriate processes. At issue here was a determination to cease funding grants that were not in the government's best interest in the view of the Secretary, a result expressly contemplated by the regulations. Any use to which the funds freed up by the non-continuation decisions would have been put was not before the court.

The district court likewise erred in depicting the Directive as establishing a "new procedure" for which the Department was required to "notify" grantees and justify the "change in policy." ER-21-22. That incorrectly assumes that the Directive qualifies as final agency action, rather than an instruction to employees to propose actions that might or might not ultimately be adopted in a final adjudicative decision. *See supra* pp. 26-27. In any event, for the reasons discussed above, the best-interest provision authorizes the Department to consider whether grants fit the government's current policy preferences, and there is no basis for requiring additional notice or other procedural steps every time the Department invokes that provision. It would be odd if the Secretary were forced not only to determine that the continuation of a grant was not in the government's best interest but also to notify grantees that the continuation might not be in the best interest before making that determination, and neither plaintiffs nor the district court provides any precedent for such a requirement.

33

**3.** Finally, each of the procedural violations, even if credited, could not support the district court's injunction. It is black-letter law that in the event that an agency decision is inadequately explained or unsupported by the record, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). In particular, "[t]he reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Id.*

The district court's injunction cannot be reconciled with these principles. If the Department was required to engage in notice-and-comment rulemaking before considering its current policy preferences, the appropriate remedy would at most entail setting aside the relevant agency decisions and permitting the agency to proceed by notice and comment. By contrast, the district court's injunction—including the requirement that the Department make new continuation decisions on an expedited timeline—leaves no room for notice-and-comment rulemaking and thereby transforms an asserted procedural requirement into a substantive bar foreclosing any consideration of current policy priorities.

Similarly, if the Department's explanations were held to be insufficient, it should have been permitted to fill any perceived gaps in the explanations. To the extent that concerns about the Department's explanations would support any relief at all, *but see* 5 U.S.C. § 706 (instructing courts to take account of the harmless-error

34

rule), that relief would entail setting aside the relevant non-continuation decisions and remanding for the Department to further elaborate its reasoning. Those concerns do not justify an injunction that compels the Department to make new decisions without considering current policy priorities, no matter how detailed the agency's explanation.

At an absolute minimum, the district court should have limited any relief to plaintiff-states that demonstrate Article III standing. The government does not dispute the standing of plaintiff-states with grantees that are components of the state government. The district court erred, however, in extending relief to other plaintiff-states on the theory that the grant non-continuations will "decrease student access to school-based services and lead students in each Plaintiff-State to seek needed mental-health service elsewhere," including from the states themselves. ER-52-53 (Order denying motion to dismiss); *see* ER-36-37 (Summary judgment order). "In recent years, the Supreme Court has specifically cautioned [courts] to be wary of theories of state standing that rely on the 'indirect effects' of federal policy on state revenue or state spending." *Washington v. U.S. Food & Drug Admin.*, 108 F.4th 1163, 1175 (9th Cir. 2024). "[A] theory of state standing 'in which all peripheral costs imposed on the States by actions of the [executive branch]' constitute cognizable injuries would 'make a mockery' of Article III." *Id.* (quoting *Arizona v. Biden*, 40 F.4th 375, 386 (6th Cir. 2022)). Those principles apply with full force here, where the district court's approach would seem to permit a state to sue whenever the federal government ends

35

(or declines to issue in the first place) any social-services grant to any entity in the state.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be reversed and the injunction should be vacated.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*
DANIEL TENNY

 *s/ Steven H. Hazel*
STEVEN H. HAZEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7217*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2498*

June 2026

36

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, defendants-appellants state that they know of no related case pending in this Court.

*s/ Steven H. Hazel*
Steven H. Hazel

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,690 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Steven H. Hazel*
Steven H. Hazel

# CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

*s/ Steven H. Hazel*
Steven H. Hazel

**ADDENDUM**

**TABLE OF CONTENTS**

34 C.F.R. § 75.253 ................................................................................ A1

**34 C.F.R. § 75.253**

**§ 75.253. Continuation of a multiyear project after the first budget period**

(a) Continuation award. A grantee, in order to receive a continuation award from the Secretary for a budget period after the first budget period of an approved multiyear project, must—

　(1) Either—

　　(i) Demonstrate that it has made substantial progress in achieving—

　　(A) The goals and objectives of the project; and

　　(B) The performance targets in the grantee's approved application, if the Secretary established performance measurement requirements for the grant in the application notice; or

　　(ii) Obtain the Secretary's approval for changes to the project that—

　　(A) Do not increase the amount of funds obligated to the project by the Secretary; and

　　(B) Enable the grantee to achieve the goals and objectives of the project and meet the performance targets of the project, if any, without changing the scope or objectives of the project;

　(2) Submit all reports as required by § 75.118;

　(3) Continue to meet all applicable eligibility requirements of the grant program;

　(4) Maintain financial and administrative management systems that meet the requirements in 2 CFR 200.302 and 200.303; and

　(5) Receive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government.

(b) Information considered in making a continuation award. In determining whether the grantee has met the requirements described in paragraph (a) of this section, the Secretary may consider any relevant information regarding grantee performance. This includes considering reports required by § 75.118, performance measures established under § 75.110, financial information required by 2 CFR part 200, and any other relevant information.

(c) Funding for continuation awards. Subject to the criteria in paragraphs (a) and (b) of this section, in selecting applications for funding under a program, the Secretary gives priority to continuation awards over new grants.

(d) Budget period. If the Secretary makes a continuation award under this section—

A1

(1) The Secretary makes the award under §§ 75.231 through 75.236; and

(2) The new budget period begins on the day after the previous budget period ends.

(e) Amount of continuation award.

(1) Within the original project period of the grant and notwithstanding any requirements in 2 CFR part 200, a grantee may expend funds that have not been obligated at the end of a budget period for obligations in subsequent budget periods if—

(i) The obligation is for an allowable cost within the approved scope and objectives of the project; and

(ii) The obligation is not otherwise prohibited by applicable statutes, regulations, or the conditions of an award.

(2) The Secretary may—

(i) Require the grantee to submit a written statement describing how the funds made available under paragraph (e)(1) of this section will be used; and

(ii) Determine the amount of new funds that the Department will make available for the subsequent budget period after considering the statement the grantee provides under paragraph (e)(2)(i) of this section and any other information available to the Secretary about the use of funds under the grant.

(3) In determining the amount of new funds to make available to a grantee under this section, the Secretary considers whether the unobligated funds made available are needed to complete activities that were planned for completion in the prior budget period.

(4) A decision to reduce the amount of a continuation award under this paragraph (e) does not entitle a grantee to reconsideration under 2 CFR 200.342.

(f) Decision not to make a continuation award. The Secretary may decide not to make a continuation award if—

(1) A grantee fails to meet any of the requirements in paragraph (a) of this section; or

(2) A grantee fails to ensure that data submitted to the Department as a condition of the grant meet the definition of "quality data" in 34 CFR 77.1(c) and does not have a plan acceptable to the Secretary for addressing data-quality issues in the next budget period.

A2

(g) Request for reconsideration. If the Secretary decides not to make a continuation award under this section, the Secretary will notify the grantee of that decision, the grounds on which it is based, and, consistent with 2 CFR 200.342, provide the grantee with an opportunity to request reconsideration of the decision.

    (1) A request for reconsideration must—

        (i) Be submitted in writing to the Department official identified in the notice denying the continuation award by the date specified in that notice; and

        (ii) Set forth the grantee's basis for disagreeing with the Secretary's decision not to make a continuation award and include relevant supporting documentation.

    (2) The Secretary will consider the request for reconsideration.

. . . .

A3